Alexander Hamilton, Adm'r. of Hugh O'Neil  vs.  Mary O'Neil.

---

ALEXANDER HAMILTON, ADM'R OF HUGH O'NEIL vs. MARY O'NEIL.

1. A widow is entitled to dower under the 1st section of the act concerning dower, R. C. 1835, p. 228, unless she elect to take under the 3rd section of same act.   Her right is absolute until divested by election.
2. It is not necessary that a widow should file a renunciation as provided in 10th sect. of the above named act, except in cases in which real estate has been devised to her, to entitle her to be endowed under 1st sect.

ERROR to St. Louis Circuit Court.

ALEXANDER HAMILTON, *in person.*

Alexander Hamilton, Adm'r. of Hugh O'Neil vs. Mary O'Neil.

POINTS AND AUTHORITIES.

1. The widow in this case takes, in the first instance, under the 3d section of the act concerning dower, R. L., 228, subject to the payment of debts.

The 12th section of article 6th of the administration law, R. L. p. 61, under which this motion was made, provides that "until the widow's dower be assigned, the court shall order such sums to be paid her, out of the hire of slaves, and the rent of real estate, as shall be in proportion to her *interest in slaves and real estate.*" This section does not define this interest; but in effect it comports with what, under our legislation upon the subject, is the true and only meaning of "dower," which at least singnifies nothing more nor less than that portion of the husband's estate to which, by law, the widow is entitled; whether it be given under that, or another, and different name. There being, then, in this instance, no devise of real estate to the widow, we refer at once to the statute of "Descents and Distributions," R. L. 222, the 1st section of which enacts, that when any person, having title to real estate, of inheritance, or personal estate undisposed of, shall die intestate as to such estate, it shall descend, and be distributed among his kindred, as is therein provided, subject to the payment of his debts and his widow's dower. As this statute is otherwise silent upon the subject, recourse must ultimately be had to the act concerning dower, for the purpose of fixing and ascertaining what is "that portion of the husband's estate to which, by law, the widow is entitled." We find in the first place, that under this statute, this is a case of election, which, however, not having been made, the simple question recurs: what portion of the estate left by the husband, is assigned to the widow independently of that which might otherwise, by election, have been acquired?

It is obvious from the slightest examination of the law, that the Legislature has enumerated two classes of widows, for each of whom distinct specific provision is made, assigning to each, in the first instance, rights differing essentially in value and extent. The first comprehends widows upon whom, by the circumstance of the death of the husband, have been thrown the burden and responsibility of maintaining and educating the children of the deceased. The second embraces those cases in which no such charge and duty exists, there being no children. The discrimination thus made, on examination, will be found to be based upon highly moral and equitable considerations. To the first is given

one-third, and for life only, but free of debts, thus recognizing and providing, as well for the rights of the children, as for the probable necessities of the widow, in supporting and educating them; reserving to the children their right of inheritance, yet preferring the widow to the claims of creditors. To the second is allotted all the real and personal estate which came to the husband in right of the marriage, remaining undisposed of, absolutely, and one-half of the real and personal estate belonging to the husband at the time of his death, also to be enjoyed absolutely, thus presenting a like two-fold consideration, that as there are no children to be affected by such a division, the widow's share should be larger, that it shall be held absolutely; yet for the same reason, there being no children to provide for, she should take subject to the creditors of her husband. It therefore requires in such a case as this, an election by the widow within the time, and in the manner prescribed by the 6th section of the act to enable her to change this specified provision into a share of one-third, under the first section.

Our past legislation upon this subject will furnish some aid in the interpretation of this Statute. Heretofore and until the act of 1825, this matter was found under the more appropriate heading of "wills, descents and distributions." Regardless of names under statutes of this general character, the legislature proceeded directly to a division of the intestate's estate, first specifying the shares of widows, instead of leaving that subject to be disposed of by a separate and distinct enactment, under the name of "dower." The primary division of a third, and a half, as dependent upon the circumstance of there being or not being children, is preserved throughout. It was not until the act of 1825, that an attempt was made to separate the law of dower from that of descents and distributions. But although they exist by different titles, yet the two subjects are so intimately blended, that a reference from the one statute to the other, becomes necessary, and they virtually stand as of old, as if they were both embraced under the provisions of one general law of "wills, descents and distributions."— If then these statutes, now apparently distinct, were consolidated into one general law, it is believed there could be but little pretence of question as to what share was allotted to the petitioner. It will be perceived, that precisely the same provision was made for the widow, without children, under the act of 1825, as is given under the act of 1835. But by the former statute, both interests were made subject to the payment of the husband's debts; the legislature uniformly holding to their favorite policy of making every thing subject to the payment of debts. This policy was so far released by the act of 1835, as to

release from debts the interest of the widow, where there are children, but only in that instance, and for the obvious reasons already mentioned. If this question arise under the act of 1825, there could be no doubt, and yet as has been shown, it is the same law with regard to the widow without children, as now exists, excepting only that under the former law, there was no obligation to elect. Insert that clause in the act of 1825, and would it alter the case, as to what specific proportion was given in the first instance? And but for the existence of that clause in the act of 1835, it might well be contended that the widow would take, not only under the 3d section, of the estate which was left, but also her dower under the first section, in all lands of which the husband was seized, and which he had conveyed during coverture, to which she had not relinquished her dower, whatever might be the condition of the estate, whether solvent or insolvent, and that this clause was intended to prevent her so doing.

It is from the use of the word "dower" in our legislation, that much of the confusion and uncertainty connected with this question arises. We retain the name, and are apt to draw indistinct analogies from the principles of the common law, upon the subject of dower, long after the system itself has ceased to exist among us. Our law bears but a slight resemblance to the common law dower; it is so modified and enlarged as to embrace not only trust estates, and lease-hold property of certain descriptions, but a portion of the personalty, and differs also in other essentials.

The literal construction given to the words of the first section, "every widow shall be endowed of the third part," proves too much. It conflicts with the provisions of the 9th and 10th sections, which provide for an election by the widow, between the bounty of her husband, and what the law has given to her. And according to that interpretation it would be impossible to endow a widow, under the 3d section. Again, in the event of an election to take under the 3d section, and the ultimate insolvency of the estate, clearly she would be entitled to nothing, unless indeed it should be held that an election under such circumstances, would not be operative. Again, this expression may be regarded as a legislative declaration, that every widow whether alien or not, and every such person for whom no testamentary provision may have been made, where a will exists (treating this latter instance in connexion with the estate of wills, as one of intestacy) shall be endowed. These and other considerations which suggest themselves, supply full efficacy and meaning to this peculiar phraseology, and no doubt led to

its adoption. The petitioner's claim, therefore, derives no support from this language.

We contend then that this is a distinct distributive share of the estate given to the widow in lieu of dower, and that she can take under the first section by her voluntary election only in the manner prescribed by the act. The act of January 25th, 1817, gave to the widow with children, dower of one-third, while in the other case, it declared that she should be "*entitled as her dower*," to one-half. The act of 1835 aims at the same thing, that is to say, a *provision as*, or in *leiu* of dower, but with the privilege of electing to take the latter. This mode of distributing an estate is not novel; see a similar statue of South Carolina; Griffith's Law Register, title, South Carolina, 852.

Another view of this matter would seem to be irresistable. The Statute of wills, p. 617, saves to the widow the right of dower in the estate of the husband, real, *personal*, and mixed. The Statute of descents and distributions, in cases of intestacy, does the same thing.— That therefore cannot be a rational exposition of the will of the Legislature, which in distributing an estate starts out with cutting off that right, thus positively established, or at most recognizes it but indistinctly, by placing it upon the inferior footing of an interest dependent upon a contingency of the most precarious description,—a due observance by the widow of the solemnities required by the act, to constitute an election. *Where then do we find the interest or dower of the widow, without children, in the personalty?* Not in the first section of the dower act, for that relates to *real estate* only. Not in the 2d section, for that is confined to a case *where there are children.* Thus far then the legislature after having expressly saved this right, have not only failed in their primary division of the estate, to provide for it, but in effect, so far as the widow is concerned, have preferred the remote kindred of the husband, by passing to them all the personal property. *It is in the third section alone,* that the interest or dower of the petitioner, in the personal property is mentioned and defined; and it is therefore to that section (and certainly not to that which omits to notice it at all,) that we must look, in the absence of an elction, to ascertain her rights. It became the plain duty of the legislature, thus having saved to widows their dower in personalty as well as real estate, to state in distinct terms what that interest should be. This they have done, and to contend that no such interest passes, *except that which may be acquired by election*, would be to reduce to a mere contingency, that which it had already, by a previous enactment, became absolutely necessary to fix and prescribe positively and definitively in the first instance;

but which being once established may very well be made to consist with the incidental right of voluntarily taking something else and different.  It is in effect saying that the legislature from no conceivable motive, but in opposition to all proper considerations have provided that the widow without children, might take the whole of her dower in the real and personal property, provided she elect so to do, but that failing to make such election, she may take a portion, that is, be confined to the realty alone. This would be inverting the order of things.  An election in lieu of dower, necessarily supposes the previous ascertainment of dower itself. The act itself furnishes an illustration of the intention, as well as the ability on the part of the legislature, in plain and distinct terms, to provide a *substitute* for dower, as may be seen in the 3d sub-division of the 3d section where an election (indefinite however, as to time,) is given to the widow with children by a *former marriage* to take certain property, real and personal.  But her dower in both kinds of property had already been fixed by the 1st and 2d sections.  This right of election is *"in lieu of dower,"* thus settled and is so expressed.

2.  Here was a large bequest of household furniture and other personal property, but no declaration of non-acceptance by the widow, as required by the 10th section of the act.  Here again is a peculiar feature in our law, which makes personalty, a part of the wife's dower.  It is admitted that the apparent intention of this part of the act, is to deprive the widow of dower in any lands devised by will, where, under that will, she takes an interest in lands as devisee.  But the 10th section on examination will be found broad enough to include under the word "provisions," a case in which personalty alone is given.  The utmost that can be contended for is that the legislature designed securing, so far as was practicable, a competent or suitable provision for widows.  It is unquestionable that in many instances, this can be done quite as effectually, and sometimes much more so, by a testamentary provision in personalty, or by devising an estate in lands.  Should the provision be deemed inadequate or precarious, the widow has simply to decline it, to ascertain which fact, an ample opportunity is given her.  Suppose then the case of a bequest of personalty, in a large amount, far exceeding the distributive share of the widow, perhaps two-thirds of the estate in value, and that this be accepted by her.  Could it be said that thus she was unprovided for, that this was a case of intestacy, as to her, within the meaning of the act?  We hold not.  So long as the statute includes personalty within the dower, and makes no distinction between the descent of real and personal property, that would not seem to be a reasonable construction of this part of the act, which confines its operation to

Alexander Hamiltion, Admr. of Hugh O'Neil vs. Mary O'Niel.

real estate : the effect of which view is not to exclude the widow from dower in such real estate, as had been conveyed by the husband during coverture, and to which she had not relinquished her right, but to deny her any participation in such estate as may be left at the time of his decease.    See 2d Dig. Equity Reports 338, under a similar statute.

GAMBLE & BATES, *for defendant in error.*

POINTS AND AUTHORITIES.

1. That the 1st section of the law of dower, Revised Code, 228, establishes the general rule, that a widow is to be endowed of one-third of the real estate for her life.

2. That the 3rd section of that law is in the nature of an exception.

3. That if a widow fails to make any election under the 5th and 6th sections of the law of dower, she must be endowed under the 1st section.

4. That the bequest in O'Neil's will of furniture in lieu of the $150 allowed to the widow by law, has no effect upon her claim for dower in the real estate.

5. If the widow does not elect, and there is no provision in regard to the consequence, is not the act to be construed, as if the clause about election was not in the statute?

SCOTT, J., *delivered the opinion of the court.*

This was a proceeding instituted by motion in the probate court of St. Louis county, in the name of Mary O'Niel, widow of Hugh O'Niel, deceased, for the recovery of a portion of the rent of the real estate of said H. O'Neil, under the 12th section of the 6th article of the act respecting executors and administrators, which directs that until a widow's dower is assigned, the court shall order such sum to be paid to her out of the hire of slaves, and rent of real estate, as shall be in proportion to her interest in the slaves and real estate.   It appears that Hugh O'Neil died seized of real estate without a child or other descendant leaving a will by which he bequeathed to his wife all his household furniture and personal property, on the premises occupied by him at the date of his will, in lieu of the sum of $150 to which she would otherwise be by law entitled.   Mary O'Neil made no election, whether she would take under the first or the third section of the act

concerning dower, nor did she file any renunciation of the provision made for her in the will of her husband. On hearing the motion, the probate court ordered the administrator with the will annexed, to pay over one-third of the rents of the real estate to the widow Mary O'Neil. From this order an appeal was taken to the circuit court, where it was affirmed, and the cause is now brought to this court.

The question submitted for determination, is, whether Mary O'Neil, the widow, having made no election, is entitled to any dower, and if entitled, under which section of the act respecting dower, shall it be assigned?

Let it be borne in mind, that the first section of the act concerning dower, is general in its terms and applies to the widows of all husbands whatsoever, without regard to circumstances; and the first clause of it, except so far as it relates to uses, is declaratory of the common law. The words are, that *every widow* shall *be endowed.* If legislation had ceased here, every widow would have been provided for, none could have complained that they were overlooked. The third section on the other hand is partial in its terms, it provides for a particular class of cases, and does not enact that the widow of every such husband shall be *endowed,* but shall be *entitled* &c. Had no other provision been made, than is contained in this section, most widows would have been left without dower or any thing in lieu of it.

Because the common law respecting dower has been changed in some particulars, it cannot therefore be maintained that the whole system in relation to that subject is repealed. The common law being the substratum of all our laws, its rules prevail unless repealed expressly, or by necessary implication. If the rules of the common law be applied in determining which of the two sections, above referred to, shall give dower, no question can be left on the mind. By the common law, dower is a title *inchoate from* the date of the marriage, and becomes consummate by the death of the husband. It is an interest which attaches on the land as soon as there is the concurrence of marriage and seizen, 4 Kent, 50; Cruise, tit. Dower; Coke, Lit. Now if dower is an inchoate title, and has its existence from the concurrence of marriage and seizen, it can have no relation to the 3rd section of the act, because when the marriage is solemnized, if there be a seizen at that time, it cannot be ascertained whether the circumstances will ever arise under which it can attach. This objection does not apply to the first section of the act. It would seem then to follow, that this section was designed to give dower, and the third was intended under certain circumstances as a substitute to it, to entitle a widow to which, it was neces-

2

sary that she should have declared an election to take it. The doctrine is, that when an election creates the interest, nothing will pass until an election is made; and if no election can be made, no interest will arise. 1 Coke, Lit. 523. United States vs. Grundy & Thornburgh, 3 Cranch. 337. There being then no interest under the 3rd section, previous to an election, and no election having been made within the time prescribed by law, none could afterwards arise. But if an interest existed under the first section, previous to any election, as it has been endeavored to be shown, and as that interest would still continue, until it was divested by an election lawfully made, it must follow, that that section gives the rule by which the rights of the defendant in error are to be ascertained and determined.

As to the objection, that the widow not having filed a renunciation of the provision made for her by the will of her husband, in accordance with the 10th section of the act concerning dower, she is not therefore entitled to be endowed; it can only be necessary to observe that the 10th section and the one preceding it, only relate to devises of real estate, and the provision made for the wife by the will, being only of personal estate, she was under no obligation to renounce that provision, in order to entitle her to dower in the real estate.

Judgment affirmed.