F. L. WINKLER, Respondent, v. ST. LOUIS, IRON MOUN-
TAIN AND SOUTHERN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, February 23, 1886.

| 21 | 99 |
|----|----|
| 35 | 636 |
| 98m | 655 |
| 21 | 99 |
| 100m | 569 |
| 21 | 99 |
| 97 | 514 |

1. DAMAGES—COMMON CARRIERS—NEGLIGENCE.—A railway passenger who is, through no fault of his, carried some distance beyond his station, on a dark night, and there put off the train, and in going back to the station falls through a cattle guard or trestle, and is injured, may recover the damage from the railway company.

2. ——— In such a case, the injury received is not a remote consequence of the wrong done by the railroad in carrying him beyond the station and putting him off at a point beyond where he was entitled to get off.

3. ——— WAIVER.—If the passenger, in such a case, was not aware that he had been carried beyond his station, his failure to demand that he be taken back to his station is not a waiver of his rights, and does not discharge the railroad's obligation to put him off at the proper place.

4. ——— If the passenger, in such a case, was apprised of the place where he was asked to get off, and of the existence of the trestle between that place and the station, his failure to object would be a waiver of his right to be carried back.

5. ——— ELEMENTS OF DAMAGE—MEASURE.—In estimating the damages in such a case, the nature and extent of the injury, and the plaintiff's mental and physical suffering, should be taken into consideration; and the amount should be fixed at a sum which will reasonably compensate him for such injury and suffering.

6. ——— PROOF OF DAMAGE.—In such a case, it is sufficient, in order to the recovery of substantial damages, if the plaintiff introduce proof of the nature, extent, and probable duration of the injury, without other proof tending to show the amount of the damage.

7. ——— PRACTICE—EXCESSIVE DAMAGES.—For an injury to the hip and the sciatic nerve, which has caused continuous suffering for more than five years, and which will probably be permanent, a finding of damages in the sum of one thousand dollars will not be declared excessive.

APPEAL from the Wayne County Circuit Court,
JASPER N. MORRISON, Special Judge.

*Affirmed.*

GEORGE H. BENTON for the appellant: The court erred in permitting any evidence to be introduced to the jury of injuties to the plaintiff's person resulting from a fall upon the trestle while walking back from the point to which he had been carried beyond his destination.  Such injuries were not the natural, necessary, and proximate effect of the alleged breach of contract, but the result of pure accident.  *Pullman Pal. Car Co. v. Barker,* 4 Col. 344; *Lewis v. Railroad,* 18 Am. & Eng. Ry. Cases, 263; *Advance case,* Mich. June 11, 1884; *Hobbs v. Railroad,* L. R. 10 Q. B. 111; *Henry v. Railroad,* 76 Mo. 288; *Francis v. St. L. Trans. Co.,* 5 Mo. App. 7; *Delano v. Ins. Co.,* 10 Mass. 354; *Tisdale v. Norton,* 8 Met. 388; *Anthony v. Slade,* 11 Met. 290; *Silver v. Frazier,* 3 Allen 382; *Dubuque W. & C. Ass'n v. Dubuque,* 30 Ia. 176; *Daniels v. Ballantine,* 23 Ohio St. 532; *McClary v. Railroad,* 3 Neb. 44; *Sheffer v. Railroad,* 105 U. S. 249; *Ins. Co. v. Tweed,* 7 Wall. 44; *Railroad v. Kellogg,* 94 U. S. 469; *Bosch v. Railroad,* 44 Ia. 402; *Curtis v. Railroad,* 27 Wis. 158; *Hartwig v. Railroad,* 49 Wis. 358; *Stiles v. Railroad,* 8 Am. & Eng. Ry. Cases, 195; *McClelland, Adm'r, v. Railroad,* 18 Am. & Eng. Ry. Cases, 260.    This case is distinguishable from cases upon injuries that have been occasioned by falling into dangerous places while passengers are alighting from trains. *Brooks v. Railroad,* 135 Mass. 21; s. c., 16 Am. and Eng. Ry. Cases, 345; *Knight v. Railroad,* 56 Me. 234; *Railroad v. White,* 83 Pa. St. 327; *Railroad v. Farrell,* 31 Ind. 408; *Filer v. Railroad,* 68 N. Y. 124; *Hoffman v. Railroad,* 75 N. Y. 605; *Whalen v. Railroad,* 60 Mo. 323; *Railroad v. Brigham,* 29 Ohio St. 374; *Railroad v. Peters,* 6 Am. & Eng. R. Cases, 198; *Brassell v. Railroad,* 84 N. Y. 241; s. c., 3 Am. & Eng. Ry. Cases, 380, and note; *Railroad v. Haner,* 12 *Id.* 149.  The injury being the result of pure accident, the party upon whom

it chanced to fall is necessarily left to bear it. No compensation can be given by law to such cases. *Weaver v. Ward*, Hob. 134; *Gibbons v. Pepper*, 1 Ld. Raym. 38; *Losee v. Buchanan*, 51 N. Y. 476; s. c.,10 Am. Rep. 323; *Vincent v. Stinnehour*, 7 Vt. 62; s. c., 29 Am. Dec. 145; *Morris v. Platt*, 32 Conn. 75; *Brown v. Collins*, 53 N. H. 442. Admitting that the act complained of was unlawful, the plaintiff was only entitled to nominal damages because there was no proof whatever of the amount. *Brown v. Emerson*, 18 Mo. 103; *Owen v. O'Reilley*, 20 Mo. 603; *Hamilton v. O'Neil*, 9 Mo. 10. The verdict and judgment were excessive, and not supported by the proof. *Trigg v. Railroad*, 74 Mo. 147; *Marshall v. Railroad*, 78 Mo. 610.

C. D. YANCEY, with whom is CHARLES A. DAVIS, for the respondent: It is the duty of railway companies to provide platforms at their stations on which passengers may alight, and to deliver their passengers on such platforms. Shear. & Red. on Neg., secs. 275, 277, 278; Sedg. on Dam. 565; *Railroad v. Whitfield*, 44 Miss. 466; *Curtiss v. Railroad*, 20 Barb. 285; *Railroad v. Farrell*, 31 Ind. 408; *Delamatyr v. Railroad*, 24 Wis. 578. The defendant having coerced the plaintiff into action to relieve himself from a perilous position, must suffer the consequences of the adoption of the one or the other of dangerous alternatives. *Filer v. Railroad*, 49 N. Y. 47; *Jones v. Boyce*, 1 Stark. 493. When negligence and recklessness co-operate in the consummation of a wrong, the doctrine of contributory negligence has no place whatever. *Hartfield v. Roper*. 21 Wend. 615; *Vandegrift v. Rediker*, 2 Zab. (N. J.) 185; *Railroad v. Adams*, 26 Ind. 76; *Railroad v. McClure*, 26 Ind. 370; *Mulherrin v. Railroad*, 81 Pa. 365; *Litchfield Coal Co. v. Taylor*, 81 Ill. 590.

THOMPSON, J., delivered the opinion of the court.

This was an action for damages tried before Jasper.

N. Morrison, special judge. Under proper allegations in his petition the plaintiff gave evidence to the effect that he was a passenger on a train of the defendant, holding a ticket which he had purchased of the defendant, which entitled him to be put off at Mill Springs; that when he heard the station "Mill Springs" called through the car, he got up and started to get out at the front end of the coach, but was directed to get out at the rear end. What next happened, according to his own testimony, was as follows: "I turned back and got off at the hind end of the coach, and let myself down very carefully, expecting to alight on the platform, and was surprised when I came in contact with the ground. The night was very dark. After we alighted on the ground, the conductor said, 'Gentlemen, stand still till we pull out, and then you will be all right,' and immediately pulled the train out. We looked around and could not see the depot, and were bewildered, and did not know where we were. We debated as to what we should do, dark. It was about two or three o'clock in the morning. We were left below Mill Springs ; were left beyond the point the company agreed to carry me. Think this point was below the station at Mill Springs about three hundred yards, but it seemed that night about a quarter of a mile. After short deliberation, and noting the surroundings, I started back the way we came, following the railroad track. We could not see any other road to follow by reason of the darkness. I was walking on the track, and could not distinguish the ties and the space between them: It was very dark; I suddenly fell, one foot going between the timbers of a trestle. It was my right foot, and I fell on my breast and arm. I fell on the timber on the cross ties."

This testimony was corroborated by the testimony of plaintiff's traveling companion, and there was also evidence tending to show that from the point where the plaintiff and his companion were put off, there was no practicable path to the depot, except along the railroad

track.    Another path would have obliged them to wade through the stream which ran through the culvert.

The plaintiff gave evidence tending to show the nature of the injury received in consequence of the fall, from which it appeared that he had sustained an injury to his back, hip, and sciatic nerve ; that he had suffered from it continually from the time of the accident, and was still suffering from it at the time of the trial, which was nearly five years subsequent to the accident, and that the injury was liable to be permanent.

Upon objections made by the defendant the court refused to allow the plaintiff to give evidence of the expense of medical treatment, and the length of time he was incapacitated from his business in consequence of the injury.    These rulings were clearly erroneous ; but, as the plaintiff does not appeal, they are not before us for review.

The defendant gave evidence tending to show that the conductor told the plaintiff and his companion that they had run by the station a short distance ; that they made no objection to being put off where they were, and did not request the conductor to take them back to the station ; and that the conductor cautioned them about the trestle between the point where they were put off and the depot.

The defendant also gave considerable evidence tending to show that the plaintiff had never been disabled or confined to his house by the injury complained of, and that he had not been heard by persons intimate with him to complain of any such injury.

The defendant objected, and saved exceptions to the admission of evidence touching the accident at the trestle, and also to the evidence given by the plaintiff touching the nature and extent of his injuries.

The court refused to instruct the jury that the plaintiff could not recover, but gave the following instructions at the request of the plaintiff :

1.    The first instruction was to the effect that, "if

the jury found from the evidence in this cause that the defendant carried the plaintiff beyond his destination, and then invited and caused him to alight from its train at a point from which egress was difficult and dangerous, and that by reason thereof the plaintiff, himself, at the time exercising due care, fell into a culvert, or through a trestle, and injured himself, then your verdict should be for the plaintiff.''

''2. In estimating the damages resulting to plaintiff by reason of the negligence of the defendant, if you find such negligence to have existed, in fact, from the testimony in this cause, you are at liberty to take into consideration the extent and nature of the injury sustained by the plaintiff, his mental and bodily suffering, and to fix the amount of damages at such sum as will reasonably compensate the plaintiff for such injury and suffering.''

The defendant requested the court to give four instructions. These the court refused to give as requested, but gave them after modifying them by interlining certain clauses, which are printed below in italics and between brackets:

''1. Notwithstanding the jury believe from the evidence that the plaintiff was carried beyond the depot platform at Mill Springs, yet, if they further believe from the evidence that the plaintiff voluntarily left the said train to walk back to said depot [*knowing that said train had passed said station*], they will find a verdict for the defendant.''

''3. If the jury believe from the evidence that the plaintiff was carried beyond the depot platform at Mill Springs, and wrongfully put off from the train by defendant's agents, they are instructed that plaintiff's damages should be limited to compensation for the inconvenience, loss of time, labor, and expense [*and bodily injury*], sustained by him in walking back to the said depot platform, as shown by the testimony in this cause.''

''4. The court instructs the jury that although

they shall believe from the evidence in this cause that plaintiff bought from the defendant company a ticket which entitled him to travel on defendant's train from St. Louis to Mill Springs station, but carried him beyond said station a distance of one hundred and fifty, or two hundred yards, as the same may appear from the testimony, before putting him off said train, still, if the jury further believe, from the evidence in the cause, that said plaintiff [*knowing he had passed said station*], alighted from said train at said point where the same was stopped, without objection, and without requesting the employes of the said defendant to back said train up to the station, and of his own volition undertook the journey back to said station, then he is not entitled to recover in this action, and the verdict of the jury will be for the defendant."

"5. The jury are instructed that the plaintiff in this case is not entitled to recover unless the jury believe from the evidence that the plaintiff was exposed to the danger of falling into the trestle in question through the wilful and wanton acts [*or the negligence*], of the agents in charge of defendant's train."

The court also refused instructions to the effect that the plaintiff could not recover for any injuries occasioned by falling through the trestle, and that he could recover no more than nominal damages.

The jury returned a verdict for one thousand dollars, and judgment was entered thereon.

I. The first question presented by these rulings is, whether the injury received by the plaintiff by falling through the trestle, was a natural or the proximate consequence of the wrong done in carrying him to the point beyond the station and notifying him to alight there. This question, we think, is to be answered in the affirmative, upon the hypothesis presented by the plaintiff's evidence, and in the negative upon the hypothesis presented by the defendant's evidence. The hypothesis presented by the plaintiff's evidence was, that the plain-

tiff supposed that they were putting him off at the depot
until his feet touched the ground, and then the conductor
assured him if he would stand still till the train pulled
out he would be all right.   If a railway carrier, instead
of discharging his passenger at the place of destination
called for by the contract of carriage, lands him at
another place from which he can not reach the place of
destination by any practicable route without encounter-
ing a serious danger, and the passenger immediately
thereafter, proceeding by the only practicable route to
the place of destination, without fault or negligence on
his part, encounters such danger and is hurt, we have no
difficulty in saying that the hurt is a proximate conse-
quence of the wrong done by the carrier.   A prudent
carrier would foresee such danger to the passenger, and
should, we think, be held bound to foresee it, and to an-
swer the consequences of it.   On this point, the case is
governed by the ruling made by this court in *Evans v.
Railroad* (11 Mo. App. 463, 471).   There, as here, the pas-
senger was put off in the night time, in violation of the
contract of carriage ; he received no hurt in being put
off, but did in endeavoring to get to the nearest station,
fall through a trestle and receive an injury ; and we held
that it was a question for the jury whether or not the
injury was a proximate consequence of the wrong.   ·

The wrong in that case was much more aggravated
than in this ; for the plaintiff was put off in direct viola-
tion of his contract of carriage ; whereas, here, the wrong
consisted in negligently carrying him a short distance
beyond the station at which the carrier was bound to
give him an opportunity to alight.   But the question,
whether the damage suffered was the proximate conse-
quence of the wrong, is not, in such a case, to be
measured by the immediate character of the wrong
itself, but by a consideration of the probable conse-
quences to the passenger from the wrong done.   If a
passenger, instead of being discharged at the place called
for in the contract of carriage, is discharged in the night

time at another place, so that in getting to his place of destination it becomes necessary to walk along a path containing a dangerous obstruction, it is not too much to say that the danger of his being injured by such obstruction is a danger which the carrier ought to foresee, and that it is not an unnatural, improbable, or remote consequence of the act of discharging the passenger in such a place. We, therefore, think that the court committed no error in admitting evidence of the accident to the plaintiff at the trestle, and of the nature and extent of the injury thus received, or in submitting the case to the jury.

II. But upon the defendant's hypothesis it would seem clear that the injury at the trestle was not a proximate consequence of the wrong of carrying the plaintiff beyond the station, and inviting him to alight where he did ; because the defendant's testimony tends to show that the defendant's conductor apprised the plaintiff that they had accidentally carried him beyond the station ; that there was a culvert between the point, where they invited him to alight, and the station, and that, being so apprised, the plaintiff did not request to be moved back to the station, and made no objection to getting off there. If this hypothesis was true, the plaintiff had waived the performance of the contract of carriage, according to its terms, with full knowledge of the situation and of the danger, and had consequently taken upon himself the risk of getting to the station in safety. The obligee in a contract can always waive performance of a contract according to its terms, and if he waives such performance he can not afterwards recover damage for its non-performance. *Kent v. Miltenberger,* 13 Mo. App. 508.

This is simply an application of a very general maxim of law, *volenti non fit injuria,* applied within very large limits, and which means that a man can not recover damages of another because of a state of things to which he himself has consented.

Whether this injury was a cause of action in the plaintiff was, therefore, the facts being in dispute, a question for the jury; and it remains to inquire whether the question was properly put to the jury.

An examination of the instructions leads us to the conclusion that the question was carefully and properly put to the jury. The ruling of the learned judge in changing two of the instructions submitted by the defendant, so as to make the question of a waiver by the plaintiff of the performance of the contract of carriage, according to its terms, depend upon whether the plaintiff had knowledge of the situation where he was put off, was entirely proper. If the plaintiff was put off in the dark on the ground, without knowing where he was, but supposing that he was at a point near the depot platform, and was told by the conductor to stand still until the train pulled out and he would be all right, and was not apprised by the conductor of any danger which he would encounter in getting to the station house, it would be a very erroneous conclusion that his failure to object or to demand the right to be discharged at the depot platform, would be a waiver of his rights in the premises. A carrier of passengers owes some duty to them beyond collecting fare of them and keeping it, and if the carrier can not perform the contract of carriage according to its terms, it is, at least, incumbent upon him before he can be heard to claim that the passenger has waived performance, to show that the passenger was properly informed as to the situation.

III. The next question is, whether the case was properly submitted to the jury on the question of damages. If we are right in holding that the plaintiff is entitled to recover damages for the injury sustained in falling through the trestle, then it follows that the second instruction given for the plaintiff, which related to the question of damages, was strictly correct, as it was such as is generally given in actions for physical injuries.

The case of *Trigg v. Railroad* (74 Mo. 147), to which we are cited on this point, has no application to it; because the passenger received no injury in that case, either in alighting, or in reaching her destination.

IV.   The h ᴀᴏ contention is, that the plaintiff was entitled only to nominal damages, because there was no proof whatever of the amount of damages.   Where the damages claimed are capable of exact, or proximate estimation in money, the rule is conceded to be that there must be proof of the amount of the damages in order to support a judgment for more than nominal damages, even upon an inquiry of damages after a default.   *Hamilton v. O'Neil*, 9 Mo. 10 ; *Brown v. Emerson*, 18 Mo. 103 ; *Owen v. O'Reilley*, 20 Mo. 603.   But this rule only applies to cases where, in the nature of things, the damages are capable either of exact or proximate estimation. In such cases evidence must be given of the amount of the damages sustained, or the plaintiff will be entitled to recover no more than nominal damages.   But in cases like the present, where the only damage proved is physical suffering, and superadded mental suffering (the latter not being of itself a ground of recovering damages), the question of the amount of damages becomes a mere matter of opinion, and the standard which the law affords in such a case, is the opinion of twelve men in the jury box, subject to the control of the court where the amount given is manifestly so great or so little as to have been the result of passion, prejudice, or a disregard of the evidence in the case.   In such cases the jury are authorized to give what the books sometimes term a "round sum," and it is not the practice to take the opinion of witnesses as to what that "round sum" shall be.

V.   The record affords no ground for the contention that the verdict in this case was manifestly excessive.

The judgment will be affirmed.   It is so ordered. All the judges concur.