KATE STEVENS, Respondent, v. KANSAS CITY ELEVATED RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 4, 1907.

1. STREET RAILWAYS: Passenger and Carrier: Contractual Relation: Termination. The relation of passenger and carrier does not cease until the carrier transports the passenger to his destination and affords him a reasonable opportunity to alight in safety from the vehicle.

2. ————: ————: Destination: Conductor's Directions: Proximate Cause. Though a passenger carried beyond her destination by the negligence of the carrier voluntarily leaves the car and is injured by following the directions of the conductor as to the route to reach her destination, under the circumstances in the record, does not make her resulting injury a remote instead of proximate consequence of the conductor's negligence; and where the passenger is induced by force of the conductor to leave the car, she is justified in relying on the superior knowledge of the conductor and should not be held to abandon her contract right to be carried to her destination, and constructively she remains a passenger until she reach-

es such point and may recover for injury resulting from the negligent directions of the conductor.

3. ———: ———: ———: ———: **Instruction.** Where a passen-ger negligently fails to alight at her destination when the car is stopped for a sufficient time, and then .voluntarily elects to leave the car at the next station, the relation of passenger and carrier ceases when she has alighted safely in the street, and thereafter the directions of the conductor as to how she should reach her destination do not bind the company, since they are not in the scope of his employment, though while she remains upon the car the relation subsists.

Appeal from Jackson Circuit Court.—*Hon. Henry L. McCune,* Judge.

AFFIRMED.

*John H. Lucas, Chas. A. Loomis* and *Ben F. White* for appellant.

(1) The court erred in the giving of plaintiff's instruction numbered 1. It predicates a recovery upon the act of the conductor in telling her to go back over the track, when it was not shown by the evidence that he had any authority to make any such suggestion, or that it was within the scope of his employment or his duties; but, on the contrary, it was shown that he did not. The court erred in refusing defendant's instructions 9, 10, 11, 12, 13 and 14. Those numbered 10 and 14 clearly expressed the law as to the liability of defend-ant under the circumstances of this case, and it was er-ror to have refused them. Thompson on Neg., sec. 2665; Railroad v. Cohn, 53 S. W. 698; Creamer v. Railroad, 16 L. R. A. 490; Vancleve v. Railroad, 107 Mo. App. 100; 4 Elliott on Railroads, sec. 1592; Lee v. Railroad, 65 N. E. 822; Railroad v. Body (Tenn.), 58 S. W. 646; Bigelow v. Railroad (Mass.), 3 Am. Neg. Cases 889; Benson v. Railroad, 32 Pac. 809; 3 Thompson on Neg., secs. 2560, 2894, 2897, 3017; Railroad v. Alexander, 30 S. W. 1113; Railroad v. Ricketts, 54 S. W. 1090.

*M. J. Oldham* and *R. B. Kirwin* for respondent.

(1) An instruction which expresses the law in general terms and not likely to mislead the jury, does not constitute reversible error, either party dissatisfied with the instruction may ask one more definite. Fillingham v. Railroad, 102 Mo. App. 585; Priesmyer v. Railroad, 102 Mo. App. 523; Carpenter v. Hamilton, 185 Mo. 617; Bank v. Ragsdale, 171 Mo. 186; Wilson v. Railroad, 99 S. W. 465; R. S. 1899, sec. 784; Wolfe v. Supreme Lodge, 160 Mo. 687. (2) Conductor was acting within the scope of his authority. Filer v. Railroad, 59 N. Y. 351; Winkler v. Railroad, 21 Mo. App. 99; Wilburn v. Railroad, 36 Mo. App. 203; Railroad v. Hoffman, 76 Ala. 498; Young v. Railroad, 3 Am. Neg. Rep. 436; Senf v. Railroad, 112 Mo. App. 84; Moses v. Railroad, 75 Mo. App. 10; Fisher v. Railroad, 59 N. Y. 351; Ephland v. Railroad, 137 Mo. 196; Owens v. Railroad, 48 Mo. App. 148; Newcomb v. Railroad, 182 Mo. 724.

JOHNSON, J.—Action by a passenger against a common carrier to recover damages for personal injuries alleged to have been caused by the negligence of the carrier. Judgment was for plaintiff in the sum of $1,500, and defendant appealed.

Between eight and nine o'clock in the evening of May 29, 1905, plaintiff became a passenger on an electric car operated by defendant on the Chelsea Park line of its street railway system in Kansas City. She entered the car at Tenth and Main streets in Kansas City, Missouri, paid her fare, and told the conductor (so she testified) that she wished to alight at the intersection of Sixteenth street and Stewart avenue in Kansas. City, Kansas, a regular stopping place. She was on her way to visit a married daughter who lived near that corner. The conductor failed to stop the car when it arrived there and plaintiff, who was not very familiar with the locality, did not know she was being carried beyond

her destination until she happened to notice a sign over a store which she knew was situated near it. She testified: "I got up and walked to the vestibule and told him he had taken me past my destination, and to take me to the end of the line and I would pay my fare, and for him to bring me back and put me off at my destination. . . . He took me by the arm—the car stopped at Midland Park—and he took me by the arm and says 'Get off here; it ain't only about two blocks, and walk back over the track.' He never told me the danger was there or anything about it, and he took me by the arm and put me down off the car."

It is not contended, from the foregoing statement, that the conductor compelled plaintiff to alight at Midland Park or that he intended to be understood as refusing to carry her to the end of the line and back to her destination, but that he induced her to leave the car and walk back over the track as the distance was short and that was the most expeditious course for her to pursue. By walking, perhaps four blocks, plaintiff could have gone to the home of her daughter over public streets, but owing to the darkness and her ignorance of the locality, she concluded to follow the directions of the conductor. She walked but a short distance on the track when, unexpectedly, she came to a trestle bridge, of the presence of which she had no knowledge, fell through it, and was injured.

The facts related by defendant's witnesses differ materially from those we have just stated. The conductor denies that plaintiff informed him of her wish to alight at Sixteenth street and Stewart avenue and states that as the car neared that place, he called out the name of the station loud enough for all of the passengers in the car to hear it and that, in answer to a signal given by a passenger, the car came to a full stop, the passenger alighted and the car remained stationary long enough for plaintiff to have departed in safety, but she remained

in her seat and the conductor, not knowing of her wish
to alight at that place, gave the signal to proceed. When
the car stopped at Midland Park, plaintiff left it. The
conductor testified: "As she passed out by me, she says,
'I wanted to get off at Sixteenth street' and I says,
'Well, we passed that.' I said, 'We stopped there and
one man got off there.' By that time, she was off the
car and gone and I closed the gate and went on." Fur-
ther he testified that he did not suggest to her to walk
back over the track and had no conversation with her
except that just stated.

At the conclusion of the evidence, defendant re-
quested and the court refused to give an instruction in
the nature of a demurrer to the evidence. The theory
of the law of the case, expressed in the instructions given
to the jury is well exemplified in two instructions which
we will quote, the first being one given on behalf of
plaintiff, and the second one asked by defendant which
the court refused to give. Plaintiff's instruction is as
follows:

"The court instructs the jury that it was the duty
of defendant and their employees to exercise toward the
plaintiff the highest practical degree of care and skill
of a very prudent person engaged in like business in view
of all the facts and circumstances as shown in evidence
and to carry her to her place of destination. If, there-
fore, you believe and find from the evidence that on the
29th day of May, 1905, Mrs. Stevens was a passenger
upon the car mentioned in evidence, and that Mrs. Stev-
ens was carried past her place of destination to Midland
Park station and that at said Midland Park station said
car was brought to a stop to let off passengers, and if you
further believe that the conductor in charge of said car
there assisted plaintiff to alight and negligently and
carelessly instructed plaintiff to walk back over the
track to her place of destination, and if you further be-
lieve and find that plaintiff did alight from said car in

obedience to the instructions of the conductor in charge of said car and walked back over the said track and while so walking back over said track, plaintiff fell through a trestle and was thereby injured, then your verdict must be for the plaintiff, provided you find and believe from the evidence that at the time plaintiff was in the exercise of ordinary care."

Defendant's refused instruction follows: "If you find and believe from the evidence that plaintiff was a passenger upon the car of defendant and desired to alight therefrom at Sixteenth and Stewart avenue, when said car reached said point, and that plaintiff notified defendant's conductor that she desired to alight at said point, then if you further find and believe from the evidence that when defendant's car in question reached Sixteenth and Stewart avenue, said car was stopped at said point for the purpose of allowing passengers to get on or off of the same and the conductor upon the car of defendant announced that said car had reached said point sufficiently loud for all passengers in said car to hear the same, and that passengers on said car got off of the same, and that said car remained standing at said point a reasonably sufficient length of time for all who were on said car desiring to alight, to get off in safety, and plaintiff wholly failed and neglected to get off of said car and remained on said car until after it had started on from said point, then you are instructed that defendant is not liable for any injury caused to plaintiff by reason of her being carried past said point at Sixteenth and Stewart avenues."

It will be observed that the jury were instructed to return a verdict for plaintiff should they find that she was injured in consequence of the negligence of the conductor in directing her to walk back over the track without telling her of the presence of the trestle bridge in her way, regardless of whether she had been carried beyond her destination by the fault of the conductor or by rea-

son of her own negligence. Our first concern will be with the inquiry into plaintiff's right to recover even on the hypothesis of facts most favorable to her cause. Should we find that the court was right in overruling the demurrer to the evidence, we then will determine the question of whether or not the instructions enlarged her cause beyond proper bounds.

From the standpoint presented by plaintiff's statement of facts, her injury was the direct result of the negligent acts of the conductor, *first,* in failing to give her a reasonable opportunity to leave the car in safety at her destination, and then, in inducing her to alight at the next station, to return over the track without informing her of the obstruction which he must have known lay in that path. When plaintiff, at the beginning of the transportation informed the conductor of the place where she wished to depart, the place thus designated being a regular station, it became the duty of the conductor to stop the car at that place, call its name or otherwise notify her that she had reached it, and to hold the car a reasonably sufficient time for her to leave it in safety.

The relation of passenger and carrier does not cease until the carrier transports the passenger to his destination and affords him a reasonable opportunity to alight in safety from the vehicle. And, as was well said by the St. Louis Court of Appeals in Winkler v. Railroad, 21 Mo. App. 99: "If a railroad carrier, instead of discharging his passenger at the place of destination called for by the contract of carriage, lands him at another place from which he cannot reach the place of destination by any practicable route without incurring a serious danger, and the passenger, immediately thereafter, proceeding by the only practicable route to the place of destination, without fault or negligence on his part, encounters such danger and is hurt, we have no

126 App—40

difficulty in saying that the hurt is a proximate conse-
quence of the wrong done by the carrier. A prudent
carrier would foresee such danger to the passenger and
should, we think, he held bound to foresee it, and to
answer the consequences of it." To the same effect is
Henderson v. Railway, 123 Mo. App. 666, 100 S. W.
1111. Concede that plaintiff left the car voluntarily,
with knowledge that she had been carried past her sta-
tion, that fact, under the circumstances before us, would
not make of her injury a remote instead of a proximate
consequence of the conductor's negligence. She had the
right to insist on being carried to the end of the line and
back to her destination without additional charge.
While we approve the rule quite generally recognized
that when the passenger, knowing that he is being car-
ried beyond his station, voluntarily leaves the convey-
ance without insisting on the full performance of the
carrier's contract, he thereby terminates his relation
of passenger, and the carrier cannot be held liable to
respond in damages for an injury he afterward sustains
in traveling to his destination, we must hold the rule
does not obtain in cases where the carrier's servants
either coerce or persuade the passenger into alighting in
an unsafe place, of the danger of which the latter has
no knowledge. And, as in the present case, where the
passenger is induced to forego the right to be carried
to his destination by the representation that he can
reach it in safety by following proffered directions, he is
justified in relying on the superior knowledge of the
trainmen and should not be held to have abandoned his
contract right to be carried to his destination and there
permitted to alight in safety. Constructively, he re-
mains a passenger until he reaches that point and is
entitled to recover for any injuries he may sustain from
following the negligent directions he received from the
carrier's servants. [Railroad v. Doane, 17 N. E. 913.]

Left as she was in darkness, in a strange place, and

ignorant of any other practicable route, plaintiff did what any ordinarily careful and prudent person in her situation would have done, i. e., followed the directions of the person who owed her a contractual duty and on the accuracy of whose knowledge she was justified in relying. The directions being given by the conductor in an attempt to perform the contract of the carrier were *intra vires* and bound the carrier to answer in damages for the injuries caused by them. The learned trial judge committed no error in overruling the demurrer to the evidence.

Passing to the second question we have marked out for solution, we have reached the conclusion that prejudicial error is embodied in the instructions under which the issues of fact were submitted to the jury. Plaintiff's right to recover was made by them to depend entirely on the question of whether the conductor told her to walk on the track without telling her that she would have to cross a trestle bridge. Finding this fact in her favor, the jury was compelled to return a verdict for her (the fact that she fell through the trestle and was injured not being disputed), though they might believe from the evidence that she was carried past her station in consequence of her own negligence. If, as defendant's witnesses say, plaintiff did not notify the conductor of her purpose to stop at Sixteenth street, and when the car stopped at that point to permit passengers to alight, remained in her seat, she is not entitled to recover from the fact that the conductor afterwards negligently directed her relative to the best way to reach her destination. We do not agree with counsel for defendant in the proposition that when the car left Sixteenth street, she had ceased to become a passenger and defendant owed her no contractual duty. The fare she paid entitled her to ride to the end of the line if she chose. On receiving timely notice from her, it was the duty of the defendant to stop at any regular station and

give her a reasonable opportunity to alight. If she failed to give such notice and was carried past the point where she intended to stop, that was her fault and, although she still continued to be a passenger until she left the car, the defendant owed her no duty to carry her back to her destination under the contract then in force. The course best to be pursued was a matter solely of her own concern and if she decided to leave the car at the next stopping place and return afoot, defendant was in no wise responsible for the consequences of such decision, and when it stopped the car and permitted her to alight, it fully discharged its contractual duty and, from the instant she stepped in safety to the street, she ceased to be a passenger. The rule thus is stated in Thompson on the Law of Negligence, vol. III, section 2665: "With respect to passengers upon street cars, that is to say, cars drawn or propelled along city or village streets for the conveyance of passengers merely, whether the motive power be horse, electricity or underground cables, the relation of carrier and passenger terminates as soon as the passenger steps from the car upon the surface of the street and does not continue during his passage to the sidewalk or thereafter."

In stepping to the street, under the hypothesis of facts we now have under consideration, plaintiff voluntarily abandoned her status as passenger and, thereafter, she could follow the advice or directions the conductor had given her, or proceed in any other way; but in either event, defendant should not be held responsible for her future mishaps. Such directions or advice bear no relation to the performance by the carrier of its part of the contract of transportation and, therefore, cannot be said to have been an act of the conductor performed within the scope of his employment. It was his business to perform his master's contract, viz., to carry plaintiff to the place where she notified him to stop for her to alight and to hold the car long enough for her to step

from it in safety. It no more was a part of his duty to instruct her with reference to the best way to reach her daughter's home than it would have been for him to tell her the best way for her to travel to somebody's store, or to advise her about her business affairs. If he assumed to give her advice about matters not connected with the transportation, he acted on his own responsibility, not that of his employer.

In view of the fact that the cause must be remanded for another trial, we will add that as plaintiff has specified in the petition a number of injuries inflicted by her fall, she will not be permitted to recover damages for injuries not specifically alleged.

The judgment is reversed and the cause remanded. All concur.